1    Joel Y. Muranaka

2    185 Hemlock Court

3    Palo Alto, California 94306

4    Ph. # 650-493-0862

5

**FILED**

2008 AUG -4  A 10: 34

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8    **SAN JOSE DIVISION**

9

10   JOEL Y. MURANAKA            Case No. C 08-00542RMW

11        Plaintiff,

12        V.                     PLAINTIFFS MEMORANDUM TO

13                               FEDERAL DEFENDANTS' MOTION

14                               AND MOTION TO DISMISS.

15   UNITED STATES OF            Date: September 19, 2008

16   AMERICA, et al.,            Time: 9:00 a.m.

17        Defendants.            Place: Courtroom 6 (4th Floor, San Jose)

18                               Judge: Honorable Ronald M. Whyte

19

20   **A. Plaintiff's memorandum to FEDERAL DEFENDANTS'**

21   **NOTICE OF MOTION AND MOTION TO DISMISS.**

22

23       Collateral Estoppel and deferred accrual: "the **Heck** rule for

24   deferred accrual is called into play only when there exists "a

25   conviction or sentence that has **not** been … invalidated," that is to say

26   an "outstanding criminal judgement." It delays what would otherwise

27   be the accrual date of a tort action until the setting aside of an extant

28   conviction which success in that tort action would impugn." Wallace

1  v. Kato et al. 549 U.S._____ (2007); Heck v. Humphrey 512 U.S.

2  512 U.S. 477 (1994)

3      It is "the standard rule that (accrual occurs) when the plaintiff has

4  'a complete and present cause of action' Bay Area Laundry and Dry

5  Cleaning Pension Trust Fund v. Febar Corp. of Calif., 522 U.S. 192,

6  201 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)), that is

7  when the "plaintiff can file suit and obtain relief," Bay Area Laundry,

8  supra at 201.

9

10      Courts have applied a doctrine of "equitable tolling" Miller v.

11  Runyon 77 F.3d 189, 191 (CA7 1996)(Posner, C.J.). The doctrine tolls

12  the running of the limitations period until the disabling circumstances

13  can be overcome.

14      In the instant case; Plaintiff, after the dismissal of the indictment of

15  United States v. Muranaka, No. 95-20119RMW (N.D. Cal. Aug 5,

16  1998), upon the violation of Mr. Muranaka's Sixth Amendment right

17  to a fair and speedy trial, filed a claim in State Court[1] for return of the

18  monies taken by the defendants named as subcontracted members and

19  agents of the United Narcotics Enforcement Team (UNET). As of the

20  filing of the case (206211), the dismissal of the indictment exposed

21  the statute of limitations and no collateral estoppel under **Heck** was

22  possible.

23      When the Government produced a superseding open-ended second

24  indictment[2] and invoked **Heck**, Plaintiff further filed a claim for return

25

26

27  [1] **Return of Property #206211; Superior Court of the State of California in and for the County of Santa Clara; Nov. 16, 1998; George Kennedy, District Attorney.**

28  [2] The District Court improperly used a "harmless error" analysis rather than acknowledge that the **structural error** of an open-ended indictment required dismissal of the second indictment. Structural error "defies analysis by 'harmless error standards' because it affec[ts] the framework within which the trial proceeds" and is not "simply an error in the trial process itself." Arizona v. Fulminate U.S._____, 309-310.

1   of these monies under the Federal Rules Of Criminal Procedure FRCP

2   41. <u>U.S. v. Muranaka</u>, No 98-20092RMW (N.D. Cal. Sept. 13, 2000).

3        Plaintiff further filed a motion that included a request for return of

4   the currency forfeited: Motion to Set Aside or Correct Sentence by a

5   person in Federal Custody 28 U.S.C. § 2255, 98CR Docket No 378.

6        All of these actions established a timely claim that was then tolled

7   by **Heck** and provided adequate "notice to preserve **beyond the**

8   **normal limitations period evidence that will be needed for their**

9   **(the defendants) defense;"** <u>Kato et al.</u>

10       Plaintiff filed suit and had his suits dismissed or had no judicial

11  notice taken of the forfeiture of the funds; "under **Heck** the statue of

12  limitations; absent tolling, would have run by the time he obtained

13  reversal of his conviction (forfeiture).

14

15       If under those circumstances he were not allowed to refile his suit,

16  **Heck** would produce immunity from 1983 (FTCA) liability; a result

17  surely not intended." <u>Kato et al</u>.

18

19       In <u>Kato et al</u> the Supreme Court said: "While we have never stated

20  so expressly the accrual date of a § 1983 (FTCA) cause of action is a

21  question **not** resolved by reference to state law." <u>Wallace v. Kato et al</u>

22  549 U.S. (2007). "the time of accrual of an FTCA claim is subject to

23  Federal law set out in **Heck.** "The interests the Supreme Court

24  identified in **Heck** require us to impose the same restriction on FTCA

25  claims that **Heck** imposed on § 1983 actions". <u>Erlin v. U.S.</u> No. 00-

26  16986, D.C. No. CV-99-04050-VRW April 19, 2004, 9th Cir.

27

28

The crux of petitioner's argument before this court is that <u>Heck v. Humphrey</u> 512 U.S. 477 (1994) as directed by <u>Kato et al</u> provides the appropriate rule of accrual for his FTCA claim.

**Heck** held in relevant part that: In order to recover damages the district court must find whether a judgement in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence.

In the instant case this determination in the <u>separate forfeiture action, taken after the criminal trial of Plaintiff</u> has been made manifest by <u>USA v. Garcia Guizar</u>, 3 96-10574 9th Cir. 10/23/98.

**Guizar** requires "**affirmative proof** that the monies forfeited were **proceeds <u>from</u> the crimes** that the Plaintiff was convicted of." The monies taken and forfeited by the defendants fail all the requirements of **Guizar**. No marked money, no informants statement, no recorded serial numbers; in fact the Government in it's in CR98 opening statements represented to the court that there was only circumstantial proof – that no sales occurred – ever – and then proceeded to introduce evidence that the bulk of the funds were in repose in Plaintiffs possession prior to 1993[3]. These funds additionally could not be subject to ex post facto seizure by the Federal Defendants as the use of a safety deposit box prior to 1993 was not criminalized by the state or the federal government. In point of fact the Federal Defendants never made the necessary determination of dates of usage or repose of the funds as they exceeded their authority in physically seizing the monies.[4]

For the record there are no alternative grounds for forfeiture. Felony drug convictions do not even as legal fiction allow automatic

---

[3] This is one example of where the structural error of an open-ended indictment produced a miscarriage of justice in the case of 98CR.

[4] At trial (CD98) the secret service confirmed this fact by establishing that the bulk of the funds were in repose prior to 1993, some as early as 1978.

4

forfeiture of monies – even if there was a large amount of money that was "associated" with the smell of illicit contraband. The United States Constitution; Article III, Section 3 cl. 2 and the First Congress abolished the forfeiture of estate as a punishment for felons: Act of April 30, 1790, ch. 9 section 244, Stat. 117.

Then - as now – the sheriff's men couldn't simply arrest citizens and plunder the estate for the King's larder.

A District court finding that a miscarriage of justice has occurred under **Guizar** in that the monies forfeited were **not proceeds <u>from the crimes for which</u>** the plaintiff was convicted is warranted because (1) The first decision was clearly erroneous and (2) It is not time barred – as is the case here under the rule of accrual stated by **Heck** and affirmed by **Wallace v. Kato et al.**

This severs any connection to the prior separate drug convictions from the Forfeiture proceedings removing any **Heck** bar to the FTCA suit from those convictions. That leaves the Money Laundering Conviction, which is: (1) Clearly erroneous – but (2) there is no **Heck** tolling of the statutes of limitation. The money laundering conviction therefore is not subject to collateral attack by the Plaintiff.

There is no attack upon the repose of any of the prior criminal convictions possible by this FTCA suit. This satisfies the requirement by **Heck** that in order to recover damages the district court must consider whether a judgement in favor of the Plaintiff would necessarily imply the invalidity of his conviction or liberty. It is clear that it would not.

The effect of this finding to the separate forfeiture proceedings of monies removes any bar of collateral estoppel to a full and fair opportunity to litigate Plaintiff's claim at trial and on direct review.

The Fifth Amendment's Due Process Clause entitles individuals whose property interests are at stake to "notice and an opportunity to be heard" United States v. James Daniel Good Real Property, 510 U.S. 43, 48. The preceding discussion discharges Federal Defendants pleadings: (A) Because the property at issue was criminally forfeited, Plaintiff's claim is barred by Collateral Estoppel. (B) Because the prior criminal Forfeiture provided an adequate remedy, the court should decline to exercise equitable jurisdiction.

( C ) The Federal Defendants claim "There is no jurisdictional basis for monetary damages and that (1) A claim for damages against the government is barred by the FTCA.

See Navarette v. United States No. 05-16915 D.C. No. CV-04 –00760-JSW (Aug. 29, 2007) "We hold that the discretionary function exception does not hold (and we reverse).

In the instant case there was a "taking" and a "keeping" by the Federal Defendants and the Federal Government that is 'inextricably – intertwined' under the rubic of the United Narcotics Enforcement Team (UNET). UNET subcontracted **Federal Defendants** along with State and Local law enforcement agents who confederated to undertake a State search warrant under the authority of the Municipal Court of California, Santa Clara County Judicial District South County Facility Case No CSW8338 under the State of California Health and Safety Code 11358 (Cultivation of Marijuana) , 11359 (Possession of Marijuana for Sale), and Penal Code 182 (Conspiracy) on May 31, 1995. These search warrants and the Return to Service from the searches were placed under indefinite seal by the Municipal State Court: Honorable Thomas Wm. Cain, Judge of the Municipal Court.

6

1    Three search warrants defined a search of: (1) APN 756-07-022,

2    Unincorporated property, Santa Clara County; (2) 239 Frances Drive,

3    Los Altos California; and (3) 185 Hemlock Court, Palo Alto,

4    California.

5    The search warrants were particularized to [ any and all yards,

6    carports, outbuildings, storage areas and sheds and trash containers

7    assigned to the above-described areas.[5]

8    The named UNET confederated agents did not show, disclose, or

9    publish the Search Warrant to Mr. Muranaka on May 31, 1995 before

10    or during the search as required by State and Federal law. Further the

11    confederated UNET agents exceeded the authorized bounds of the

12    Search Warrant to physically seize from a remote location safety

13    boxes where funds of Mr. Muranaka were at repose.

14    It is Plaintiff's intent thru discovery to determine the confederated

15    UNET agents standing for this portion of the suit. At this preliminary

16    stage it would be a waste of judicial resources and an untimely burden

17    to the joint and separate liability of the other State defendants to

18    determine the job – shopping status of The Federal Defendants and

19    others incidentally employed by the IRS, DEA, California Bureau of

20    Narcotics, Santa Clara Sheriff's Department, San Benito County

21    Sheriffs Department etc. thru a multiple number of 28 U.S.C. §

22    2675(a) suits and State actions. It is suspected that UNET was

23    intentionally designed to "hide the ball" to produce just this kind of a

24    problem. If something goes wrong; say like a 'State Agent' lying to

25    Judge Thomas Wm. Cain to get the Search Warrant, UNET can

26    always 'sell' the case to a more favorable venue where they don't

27

28

[5] See attached search Warrant CSW8338, Honorable Judge Thomas Wm. Cain, judge of the Municipal Court, Santa Clara County District, South County Facility.

7

have to deal with Judge Thomas Wm. Cain taking judicial notice of being lied to and turned into a 'rubber stamp'.

There are two inextricably – intertwined causes for action for recovery of monies implicated by the ruse of subcontracting federal and state agents under the umbrella of UNET. The **Federal Defendants** were plainly participating and taking an active role in the State Search 'under the color of state law' may not now claim personal and professional immunity because of their other jobs the Federal Government "adopted" the case later in the day on May 31, 1995. To the contrary their professional training and employment as (a) "Peace Officer in the County of the County of Santa Clara" under and for the County of Santa Clara requires that they are liable to both Federal and State statutory and jurisdictional requirements for service of warrant.

While executing a search warrant it is open and notorious and the named Federal Defendants are well aware that they must not exceed the scope of the warrant. The general rule is that only items specifically enumerated may be seized, and once those items have been found the search must stop. (See U.S. v. Gagnon, 635 F.2d 766 (10th Cir. 1980).

The only authority under which The Federal Defendants acted was **state authority** and the **State Search Warrant** set the lawful bounds of the search and seizure. The Federal Defendants were aware that the search warrants were sealed with no provision for notice to the plaintiff as the Federal Defendants were present when the Affidavit For Warrant (AFW) and the search warrants were explained pre-service of warrant and from review of the AFW on or before May

30, 1995.[6] The Federal Defendants were well aware that a 'sneak and peak' warrant – when used for actual seizure – made it impossible to comply with Federal Rule of Criminal Procedure 41(d) and violated the Fourth and Fourteenth Amendments. (See U.S. v. McGrew, 122 F.3d 847 (9th Cir. 1980). The court in McGrew also found that the "good faith exception" for this ('state search warrant') did not apply since there must be a reasonable belief that the warrant and service of warrant was valid.

## CONCLUSION:

For the record: FEDERAL DEFENDANTS are urging the Court to engage in an abuse of discretion to summarily dismiss Plaintiff's cause of action. The Supreme Court "said in Conley v. Gibson, 355 U.S. 41, 45-46, that "A complaint should not be dismissed for failure to state a claim unless it appears **beyond doubt** that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."" Cruz v. Beto, 405 U.S. 319 (1972).

Federal Defendants cite 28 U.S.C. § 2679(b)(1) as justification for dismissal with prejudice [See Federal Defendants Notice of Motion and Motion(s) to Dismiss; Page 7, L 2 thru 11] . They apparently failed to cite 28 U.S.C. § 2679(a)(b)(2), which states in relevant part:

(2) Paragraph (1) does not extend or apply to a civil action against an employee of the government---

(A) which is brought for a violation of the Constitution of The United States, or

---

[6] The federal government (AUSA Terri Canepa) read and reviewed the AFW for probable cause on or before May 30, 1995.

9

1

2    (B) which is brought for a violation of statute of the United
     States under which such action against an individual is
3    otherwise authorized.

4

5    It would be premature to terminate this cause of action before
6    discovery makes manifest what the trier of fact would be properly
7    asked to decide.

8    Plaintiff asks that FEDERAL DEFENDANTS be required to
9    honor discovery to the Plaintiff in a timely fashion being mindful that
10   the disingenuous pleadings and dilatory discovery practices of the
11   U.S. Government led to a nearly three year delay to reach a mistrial in
12   CR98-20092RMW.[7]

13

14

15

16   Date: August 4, '08

17

18

19                                 Respectfully Submitted:

20

21

22                                 Joel Y. Muranaka.

23

24

25

26

27

28

---

[7] During that time period AUSA Jeffery Nedrow was discovered fabricating evidence and obstructing justice in collusion with affiant Robert P. Mecir resulting in his replacement by AUSA John N. Glang after State Defendant Robert Mecir was determined to have lied to the Honorable Judge Thomas Wm. Cain to obtain the Search evidence "adopted" by the Federal Government for CR95—20119RMW.

10

# ATTACHMENT

MUNICIPAL COURT OF CALIFORNIA
SANTA CLARA COUNTY JUDICIAL DISTRICT
SOUTH COUNTY FACILITY

· **SEARCH WARRANT**



THE PEOPLE OF THE STATE OF CALIFORNIA
To any Sheriff, Constable, Marshal, Policeman or Peace Officer in
the County of Santa Clara:

Proof, by affidavit, having been made before me this day by

Robert Mecir that there is probable cause for believing that

evidence of the commission of felonies, to wit:  violations of

**CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 11358 (CULTIVATION OF**

**MARIJUANA) and 11359 (POSSESSION OF MARIJUANA FOR SALE) and**

**PENAL CODE SECTION 182 (CONSPIRACY),**  more

particularly described below and property used in the commission

of these felonies will be located on the premises described below.

YOU ARE THEREFORE COMMANDED, in the daytime to make search of

**APN 756-07-022, UNINCORPORATED, SANTA CLARA COUNTY, CALIFORNIA,**

which premises consist of : a gated property approximately 3.5

miles west of the yellow county gate which separates the paved

portion of Summit Road from the dirt portion. A metal bar

stretches across the driveway. A No Trespassing sign protrudes

from the dirt fifteen feet west of the driveway. The parcel has

a a blue barn type structure, and a white trailer.

**AND** any and all yards, garages, carports, outbuildings,

storage **areas** and sheds and trash containers assigned to the

above-described premises;

for the following property:

1. Marijuana in all forms;

2. Growing marijuana plants;

3. Literature regarding marijuana cultivation and
   drying;

4. Items used to grow and dry marijuana such as

000254

irrigation timers, pipes, grow lights, seeds,
drying screens;

5. Articles of personal property tending to establish
   the identity of person or persons in control of
   marijuana cultivation areas, vehicles, structures,
   storage areas, residences or containers where
   marijuana may be found;

6. Large sums of money.

7. Firearms, packing materials, hot bag sealers,

   scales.

8. Receipts/Billing statements for items purchased for the
   purpose of growing Marijuana.

9. Articles of personal property linking subject Johnson
   with subject Muranaka. Photos and video tapes.

10. Pay/Owe sheets, Buyers/Sellers lists, watering schedules,
    video cameras. Computer hardware and software consisting
    in part of and including, but not limited to, floppy disc
    hard drives, CPU, keyboards, monitor screens, pagers and
    printers, telephone answering tapes, copies of all tax
    returns (federal and state). Real estate/Loan papers.

11. Savings/checking account passbooks, keyes to safe deposit
    boxes, passports, vehicle registration titles.

    And if you find the same or any part thereof, to hold
    such

property in your possession under California Penal Code Section

1536, or to release the property to the appropriate agency for

state or federal forfeiture proceedings.


Given under my hand this __3__ day of May, 1995.

JUDGE OF THE MUNICIPAL COURT
THOMAS WM. CAIN

2

000255